IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| EDDIE JAMES KING, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 5:21-cv-215-TES-CHW |
| | : | |
| DOCTOR AIKENS, *et al.*, | : | Proceedings under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendants. | : | |
| | : | |

### ORDER AND RECOMMENDATION

Pending before the Court are numerous motions filed by Plaintiff and two motions to dismiss (Docs. 77, 88) filed by Defendants. For the reasons set forth below, it is **ORDERED** that Plaintiff's motions for default judgment (Docs. 100, 106, 107), motions seeking miscellaneous relief (Docs. 74, 81, 82, 84, 87), motions for a hearing (Doc. 85, 114, 115), and motion to appoint counsel (Doc. 105) are **DENIED**. Plaintiff's motions for extension of time to respond (Docs. 99, 101, 102, 111) are **DENIED as MOOT**. Because this order considers Plaintiff's surreplies (Docs. 117, 118), his motion to respond (Doc. 117) is **GRANTED**.

It is further **RECOMMENDED** that Plaintiff's motions for judgment (Docs. 72, 95, 96) be **DENIED**, that Plaintiff's motion for reconsideration (Doc. 109) be **DENIED**, and that Defendants' motions to dismiss (Docs. 77, 88) be **GRANTED**.

1. Plaintiff's Motions for Default Judgment

Plaintiff has filed repeated motions for default judgment against Defendant Ulrich. (Docs. 106, 107). Plaintiff also filed a motion to rule in Plaintiff's favor (Doc. 100), which in substance is a motion for default judgment. Plaintiff contends that he did not receive a responsive pleading until after Defendant Ulrich's deadline to respond. As explained in the Court's previous order

denying Plaintiff's previous motions for default (Doc. 103), Defendant Ulrich filed a timely, pre-answer motion to dismiss with the clerk. There is no basis for entering a default judgment against Defendant Ulrich, and Plaintiff's motion to rule in Plaintiff's favor (Doc. 100) and motions for default judgment (Docs. 106, 107) are therefore **DENIED**.

2. Plaintiff's Motions for Miscellaneous Relief

Plaintiff has filed several miscellaneous motions, which all, in some way, request relief or judgment in his favor. The motions will be addressed in the order in which they were filed. None of the motions is based in traditional legal concepts, and none of them provides a basis for relief.

Plaintiff has filed a "motion for justice to be served." (Doc. 74). Plaintiff states that the alleged injuries to his eyes have scarred him for life and argues that defense counsel is wrongly justifying Defendants' actions. He asks the Court for clemency,[1] money damages, and an order compelling Defendants tell the truth about Plaintiff's case. This motion provides no basis for relief. Plaintiff's motion for justice to be served (Doc. 74) is **DENIED**.

Plaintiff has filed a "motion to define deliberate indifference." (Doc. 81). Plaintiff believes that defining deliberate indifference is necessary because he and defense counsel have different definitions of the term and how the judicial process works in general. Plaintiff then reiterates his allegations against Defendants and asks why justice has not been served. The Court cannot give Plaintiff legal advice, and his motion is not a proper vehicle for granting judgment in his favor. Therefore, Plaintiff's motion to define deliberate indifference (Doc. 81) is **DENIED**.

Plaintiff has also filed a "motion to understand plaintiff" (Doc. 82), in which he asserts his

---

[1] Throughout several of Plaintiff's filings, Plaintiff requests clemency as a form of relief. Clemency, release, or other relief from a conviction is not properly awarded in a § 1983 action. *See Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (explaining "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release…").

concerns about not being treated fairly, explains his understanding about the various legal burdens of proof, and states how he believes the burdens of proof apply to his case. Plaintiff does not request any specific relief. To the extent Plaintiff intended this motion to ask for judgement in his favor, his "motion to understand plaintiff" (Doc. 82) is **DENIED**.

Plaintiff has next filed "motion to define color of law." (Doc. 84). Plaintiff refers back to his motion to define deliberate indifference and rehashes several previous arguments for motions that have previously been denied. Plaintiff again raises no grounds for relief. Plaintiff's motion to define color of law (Doc. 84) is **DENIED**.

After Plaintiff received a notice of leave of absence from one of the defense attorneys, Plaintiff filed a "motion to proceed forward or settlement [with] Plaintiff." (Doc. 87). He argues that the leave of absence should not delay any of the proceedings of his case and asks the Court to rule in his favor before any leave of absence takes place. An attorney providing the opposing party notice of a leave of absence is a frequent and normal occurrence. There were no court appearances scheduled or filing deadlines that might have been affected by the leave of absence, and the dates about which Plaintiff complains have passed. Plaintiff's motion to proceed forward or settlement [with] Plaintiff is **DENIED**.

3. <u>Motions to Set a Hearing</u>

Plaintiff has filed several motions requesting that a hearing be set in his case. (Docs. 85, 114, 115). Plaintiff argues that he could better explain his case in person. The Court often decides motions solely on the parties' briefs and without having a hearing, as was explained to Plaintiff in the Court's notices about Defendants' motions to dismiss. (Docs. 80, 89). Plaintiff has not shown that any hearing is required in this case. Therefore, Plaintiff's motions requesting a hearing (Docs. 85, 114, 115) are **DENIED**.

4. Motion to Appoint Counsel

Plaintiff filed a motion requesting the appointment of counsel (Doc. 105), in which he argues that he is unable to prosecute this case due to delays in receiving mail. (*Id*.) As this is Petitioner's first request for counsel, the Court advises Petitioner that "[a]ppointment of counsel in a civil case is not a constitutional right." *Wahl v McIver*, 773 F.2d 1169, 1174 (11th Cir. 1986). Appointment of counsel is a privilege that is justified only by exceptional circumstances. *Id*. In deciding whether legal counsel should be provided, the Court considers, among other factors, the merits of Plaintiff's claim and the complexity of the issues presented. *Holt v. Ford*, 862 F.2d 850, 853 (11th Cir. 1989). In accordance with *Holt*, the Court notes that Plaintiff set forth the essential factual allegations underlying his claims and that the applicable legal doctrines are readily apparent. The alleged delays in the mail have not hindered Plaintiff from filing *multiple* motions and other documents on his own. As such, Plaintiff's motion to appoint counsel is **DENIED**. Should it later become apparent that legal assistance is required in order to avoid prejudice to Plaintiff's rights, the Court, **on its own motion**, will consider assisting him in securing legal counsel at that time. Consequently, there is no need for Plaintiff to file additional requests for counsel.

5. Motions for Extension of Time to Respond to Pending Motions

In several motions, Plaintiff requests extensions of time to file any needed responses and to defend his case, arguing that he has not received various motions or other courtesy copies from defense counsel. (Docs. 101, 102, 111). The last motion requesting an extension of time was filed June 17, 2022 (Doc. 111), and Plaintiff has since filed replies to Defendant's motions to dismiss. There is no need to extend Plaintiff's time to respond further. Plaintiff's motions for extension of time to respond (Docs. 101, 102, 111) are **DENIED as MOOT**.

Plaintiff also filed a "motion to be fair" (Doc. 99) after calling the clerk's office and discovering that several of his filings had not been received. He cites concerns about various delays related to the prison mail room and worries that his case would be closed without receiving a chance to respond to Defendants' motions. To the extent the motion may be construed as requesting additional time to respond to Defendants' motions to dismiss or to submit additional information, Plaintiff's motion to be fair is also **DENIED as MOOT.** Plaintiff has filed several documents since this motion was filed, and the Court has considered each filing submitted by Plaintiff.

6. Motion for Reconsideration

Plaintiff now asks that the Court reconsider and reverse its order adopting the recommendation to deny Plaintiff's motion for final judgment. (Docs. 70, 83, 109). The District Court found that Plaintiff's objection to the recommendation failed to make any substantive argument. (Doc. 83). Plaintiff in his motion for reconsideration asks to be given another chance to lodge a better objection. (Doc. 109). Plaintiff's motion makes no new arguments, however, and the arguments that he makes were already considered in the Court's order and the underlying recommendation. (Docs. 70, 83). Plaintiff has provided no new reason to grant his requested relief under any of the grounds listed in Rule 60(b) of the Federal Rules of Civil Procedure, including the "catchall" provision found in Rule 60(b)(6). Therefore, it is **RECOMMENDED** that Plaintiff's motion for consideration (Doc. 109) be **DENIED**.

7. Motions for Judgment on the Pleadings

Plaintiff has filed several motions that can be best construed as motions for judgment on the pleadings. (Docs. 72, 95, 96). These motions rehash the general allegations found in his complaint and ask the Court both to award him judgment and to hold off on judgment. *See, e.g.*,

(Doc. 96, p. 3). The later motions could also be read, in part, as responses to Defendants' motions to dismiss. Defendants urge the Court to deny Plaintiff's requests for judgment against them because a motion for judgment on the pleadings would be premature and improper at this time. (Docs. 76, 104, 116). Plaintiff has previously submitted a motion requesting judgment against Defendants, which was construed as a motion for judgment on the pleadings and denied. (Docs. 41, 70, 83). For the reasons set forth in the previous recommendation and order (Docs. 70, 83), Plaintiff's request for judgment against Defendants is not supported. It is **RECOMMENDED** that Plaintiff's motions for judgment against Defendants Aikens and Mason (Docs. 72, 96) and against Defendant Ulrich (Doc. 95) be **DENIED**.

8. Motion to Submit a Surreply

Plaintiff filed a "motion of response to above defendants and attorney reply" (Doc. 117), which is construed as a request for permission to file a surreply. The Court, having read and considered Plaintiff's filings in opposition to Defendants' motions to dismiss, including his motion (Doc. 117) and supplemental response (Doc. 118), hereby **GRANTS** Plaintiff's motion of response. (Doc. 117)

9. Defendants' Motions to Dismiss

Defendants move to dismiss Plaintiff's case based upon a failure to exhaust administrative remedies prior to filing suit. (Docs. 77, 88). Because the record shows that Plaintiff filed suit before he completely exhausted administrative remedies, dismissal is warranted.

Background

On June 26, 2021, Plaintiff filed his initial complaint against Defendants. (Doc. 1). When the complaint was initially screened, it was recommended that Plaintiff's suit be dismissed because he did not adequately allege a deliberate indifference claim. (Doc. 8). Plaintiff moved to amend

6

his complaint, however, and his motion was granted. (Doc. 10, 11). In his original complaint, Plaintiff claimed that he had been unsatisfied with Defendant Ulrich's treatment. (Doc. 1). After seeing a doctor, whom Plaintiff believes to be supervised by Defendant Ulrich, at Augusta State Medical Prison on December 11, 2020, Plaintiff asked Defendant Mason for a second opinion from a different treatment provider. (Docs. 1, 5-1). A note indicated that Plaintiff's loss of vision occurred because of retinal detachment. (Doc. 5-1).

In his amended complaint, Plaintiff additionally claimed that he had undergone several unsuccessful procedures and that glaucoma caused some of the vision loss in his left eye. (Doc. 10, ¶ 3). Plaintiff alleged that Defendant Ulrich's treatment caused additional issues and that Defendant Ulrich is only guessing at what is causing Plaintiff's problems. (*Id*., ¶¶3-4). Plaintiff alleges that Defendants Mason and Aikens knew of his condition. Despite the tenuous nature of Plaintiff's claims against Defendants, his claims for deliberate indifference to a serious medical need were permitted to move forward for factual development following screening of the amended complaint. (Doc. 11).

All Defendants have raised Plaintiff's failure to exhaust in support of their motions to dismiss. (Docs. 77, 88). Plaintiff has responded by citing the tardiness of Defendant Ulrich's motion, arguing the merit of his underlying claims, and asserting that any dates cited by Defendants are moot. (Docs. 108, 117, 118).

## The Exhaustion Requirement

The PLRA requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law. 42 U.S.C. § 1997e(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including

deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed to eliminate unwarranted federal-court interference with the administration of prisons" by "seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id*. at 1082. Second, if the complaint is not dismissed under step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. …Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id*. at 1082-83 (internal citations omitted).

Grievance Procedure

The grievance procedure applicable in this case is set by the Georgia Department of Corrections (GDOC) Standard Operating Procedure No. 227.02. (Doc. 77-3). Under that procedure, prisoners must follow a two-step process by first filing an "original grievance" within 10 days of the grievable issue. (*Id*., p. 8). Prisoners may file outside of the 10-day window if they show good cause. (*Id*.) The original grievance is then screened by prison staff, and typically either rejected or accepted for processing. (*Id*., p. 9). The grievance procedure further provides that a response of some kind is due within 40 days of the date of a grievance's submission, with the

possibility of a 10-day extension on written notice. (*Id.*, p. 11). On expiration of the response period or on the prisoner's receipt of a response, the prisoner must proceed to step two by filing a "central office appeal" within seven days. (*Id.*, p. 14). The grievance procedure then contemplates a 120-day period in which the Commissioner may give a response. (*Id.*, p. 15).

## Analysis

In first considering whether dismissal for failure to exhaust is appropriate under *Turner*, a court must first consider all the alleged facts construed in favor of Plaintiff when those facts conflict. In his original complaint, Plaintiff stated that the situation underlying his claims took place "around December 2020" and that he filed a grievance, but "they hadn't rule." (Doc. 1, p. 3). Plaintiff did not complete the section requesting the outcome of any grievance appeals. (*Id.*, p. 4). Plaintiff has responded to Defendants' motion to dismiss by stating that he "wrote one letter, file[d] grievance at the Prison level, [and] appeal[ed] after denied to the Central Office." (Doc. 108, ¶ 2). Even with all the facts construed in Plaintiff's favor under *Turner*'s step one, it appears that Plaintiff did not exhaust before filing suit based upon his admission that no one had ruled upon his grievance. (Doc. 1, p. 3). Nevertheless, for purposes of *Turner*'s step one, the Court will accept Plaintiff's broad assertion that he exhausted as true and proceed to the second step. *See generally*, (Docs. 108, ¶ 2; 118, ¶ 4).

Moving to *Turner's* second step, the disputed facts must be examined to determine whether Plaintiff exhausted the available administrative remedies available to him. The record shows that Plaintiff did not exhaust *prior* to filing suit as required. Plaintiff and Defendants agree that the most applicable[2] grievance to Plaintiff's claims is Grievance No. 323923, which is the only grievance he filed between December 2020, and the filing of his original complaint on June 26,

---

[2] Defendant Ulrich argues that Grievance No. 323923 fails to cover all the underlying claims which were permitted to move forward in the Court's screening order. (Doc. 77-1, p. 6-7).

2021. *See* (Docs. 44-2, p. 3; 77; 77-2, ¶ 11; 77-4; 88). Plaintiff filed Grievance No. 323923 on May 3, 2021. (Doc. 77-5, p. 2). Plaintiff first appealed the result of the grievance on July 14, 2021, *after* he had filed suit. (Doc. 1; 77-5, p. 1). Plaintiff fully appealed the grievance, but the appeal was not denied until February 23, 2022. (Doc. 77-4, p. 1). After receiving the grievance appeal response, Plaintiff filed it with the clerk in March 2022. (Doc. 44-2, p. 3). Plaintiff argues that all the dates involved in his grievance process "are moot" because he mailed everything to the Georgia Department of Corrections or the Court as soon as he was able. (Doc. 108, ¶ 2).

If Plaintiff intended to argue that the dates "are moot" because Grievance No. 323923 was fully exhausted in February 2022, his argument misunderstands the PLRA's exhaustion requirements. The PLRA requires exhaustion *prior* to filing suit. 42 U.S.C. § 1997e(a). There is no dispute that in June 2021, Plaintiff was still pursuing the grievance process – a process that was not complete until February 2022. Plaintiff's initial complaint serves as the time marker against which to measure timely exhaustion of available administrative remedies as required. *Harris v. Garner*, 216 F.3d 970 (11th Cir. 2000). In *Harris*, the Eleventh Circuit, sitting *en banc*, considered the question of what the word "brought" means in the context of the PLRA requirements, an amended complaint, and later exhaustion. The Court concluded that "'brought' means 'commenced.'" *Id*. at 974. Amending or supplementing the complaint to show exhaustion that did not exist when the action commenced will not suffice to meet the exhaustion requirement. *Id*. at 982-984 (discussing Fed. R. Civ. P. 15 and other instances where amendment will not cure jurisdictional requirements needed to bring suit). Pursuant to *Harris*, the entire administrative process, from the initial grievance to the appeal outcome, needed to have been completed before Plaintiff filed this action in June 2021. Because the process was still pending at the time he filed

suit, Plaintiff failed to exhaust his available administrative remedies prior to bringing suit. Therefore, the dismissal for failure to exhaust is warranted under step two of *Turner*.

Because Plaintiff failed to exhaust his administrative remedies prior to commencing this action, it is **RECOMMENDED** that Defendants' motions to dismiss (Docs. 77, 88) be **GRANTED** and that the case be dismissed without prejudice.[3]

## CONCLUSION

As outlined above, it is **ORDERED** that Plaintiff's motions for default judgment (Docs. 100, 106, 107), motions seeking miscellaneous relief (Docs. 74, 81, 82, 84, 87), motions for a hearing (Doc. 85, 114, 115), and motion to appoint counsel (Doc. 105) are **DENIED**. Plaintiff's motions for extension of time to respond (Docs. 99, 101, 102, 111) are **DENIED as MOOT**. Plaintiff's motion to respond (Doc. 117) is **GRANTED**. It is **RECOMMENDED** that Plaintiff's motions for judgment (Docs. 72, 95, 96) and Plaintiff's motion for reconsideration (Doc. 109) be **DENIED** and Defendants' motions to dismiss (Docs. 77, 88) be **GRANTED**.

## OBJECTIONS TO THE RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

---

[3] A dismissal without prejudice is appropriate in Plaintiff's case because the applicable two-year statute of limitations has not yet run. *See generally, Justice v. United States*, 6 F.3d 1474, 1482 n.15 (11th Cir. 1993); *Burden v. Yates*, 644 F.2d 503, 505 (5th Cir. 1981) (both discussing the effect of dismissals without prejudice when the statute of limitations has expired).

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO ORDERED AND RECOMMENDED**, this 9th day of August, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge